IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ARTHUR F. BUONORA, JR.,

                              Plaintiff,

v.                                                    Civil Action No. 1:05-CV-1133
                                                      (FJS/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

ERWIN, McCANE & DALY                  THOMAS C. ERWIN, ESQ.
23 Elk Street
Albany, New York 12207

FOR DEFENDANT

HON. GLENN T. SUDDABY                  WILLIAM H. PEASE, ESQ.
United States Attorney for the         Special Assistant U.S.  Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

OFFICE OF GENERAL COUNSEL              BARBARA L. SPIVAK, ESQ.
Social Security Administration         Chief Counsel, Region II
26 Federal Plaza
New York, New York 10278               KAREN M. ORTIZ, ESQ.
                                       Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Arthur Buonora, who suffers from various diagnosed physical impairments including degenerative disc disease of the lumbar spine, osteoarthritis of the right hip, and a left foot condition which appears to be well controlled through treatment and the use of orthotics, has commenced this proceeding seeking judicial review of the denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act.  In support of his challenge, plaintiff maintains that the finding of the administrative law judge ("ALJ") assigned to decide the matter at the agency level, to the effect that he was not disabled at any relevant time, is not supported by substantial evidence, in that it does not take into consideration the full extent of the limitations associated with plaintiff's impairments and additionally results from the ALJ's failure to consider and develop the record with respect to his potential psychological impairments.

Having carefully reviewed the record now before the court, considered in light of plaintiff's arguments, I find that the Commissioner's determination resulted from the application of proper legal principles, and is supported by substantial evidence.

I.     BACKGROUND

Plaintiff was born in 1949; at the time of the administrative hearing in

this matter, he was fifty-four years old.   Administrative Transcript at 25, 56,

271, 286.[1]  Plaintiff has only a seventh grade education, and in the past has

been employed in various settings, including as a cook, laundry worker,

laborer and mover.  AT 48-53, 59, 62, 67.  Plaintiff does not drive, and at the

time of his application resided in a homeless shelter.  AT 75, 78.

Plaintiff has received treatment from various medical care providers,

principally at Veterans Administration ("VA") medical centers in Bath, New

York and Albany, New York.  *See* AT 104-70, 184-261.  A review of plaintiff's

medical records reveals evidence of moderate degenerative disc disease and

facet arthropathy at L5-S1; Grade 1 spondylolisthesis at L4 on L5; and mild

atheromatous calcification of the abdominal aorta, with no acute fracture or

bony abnormalities of the lumbosacral spine.  AT 159, 161.  *See also* AT 174.

Medical records, including X-rays, also have revealed the existence of mild

osteopenia and minimal degenerative arthritic changes in plaintiff's right hip.

*See e.g.,* AT 167.  Examinations over time, however, have revealed relatively

---

[1]      Portions of the administrative transcript, Dkt. No. 6, filed by the
Commissioner and comprised of a compilation of the records and testimony before the
agency, will be cited as "AT ___."

modest interference caused by those diagnosed conditions, in terms range of motion and gait, with no neurological or sensory deficits associated the ailments. *See, e.g.,* AT 140, 142; *see also* AT 214, 216.  Plaintiff's treatment has included several regimens of physical therapy, the use of a transcutaneous electrical nerve stimulator ("TENS") unit, and Naproxen with additional administering of Tylenol as required.  AT 190, 202, 215, 259.

In addition to experiencing chronic lower back and right hip pain, plaintiff has suffered in the past from a foot condition, predominantly in his left foot.  In November of 2001 plaintiff was seen for that impairment by Dr. Lois Miller, a podiatrist.  AT 137.  X-rays taken at that point revealed no heel spur or any other discernable problems.  AT 138.  Plaintiff was ultimately fitted for custom orthotics to alleviate foot pain.  AT 192.  Although they have helped with his foot pain, plaintiff admits that he does not wear them with any regularity.  *Id.*

Plaintiff was later seen for his foot condition by another podiatrist, Dr. Elise Richtol, on April 15, 2003, at which time he was diagnosed as suffering from flat foot type with mild bunions.  AT 19-93.  After complaining of shooting pains in his left foot, plaintiff was again fitted with orthotics, a measure designed to alleviate plaintiff's foot pain due to the significance of

his flat feet.  AT 193.

Plaintiff was consultatively examined by an agency orthopedist, Dr. Amelita Balagtas, on April 4, 2002.  AT 171-74.  In a report of that examination, Dr. Balagtas observed that plaintiff walked with a slight limp on the left but was able to heel-toe walk, noting further that the plaintiff exhibited a full range of motion of the spine with no paracervical pain and spasm, slight tenderness over the left lumbar paraspinal, a negative straight leg raising test, full ranges of motion in the upper and lower extremities, and intact fine motor activity of the hands.  AT 172-73.  Based upon that examination Dr. Balagtas concluded that plaintiff would have "some limitations" in activities that require bending, lifting, prolonged sitting, and prolonged standing, but did not quantify or otherwise further define those limitations.  AT 173.

II.     PROCEDURAL HISTORY

A.     Proceedings Before The Agency

Plaintiff filed applications for DIB and SSI benefits on March 11, 2002, alleging disability as a result of his physical impairments, with an onset date of February 15, 2002 .  AT 42-44, 271-72.  Following the denial of those applications at the initial level, AT 25, 270, at his request a hearing was conducted on March 4, 2004 before ALJ Thomas P. Zolezzi to further

address his request for benefits.  AT 281-311.  ALJ Zolezzi subsequently

issued a written decision on March 16, 2004, in which he concluded that

plaintiff was not disabled at the relevant times.  AT 13-24.  In his decision,

based upon a *de novo* review of the available medical evidence and plaintiff's

hearing testimony, and employing the familiar, five step test for determining

disability, ALJ Zolezzi initially found at step one that plaintiff had not engaged

in substantial gainful activity since the alleged onset date of his disability.  AT

17.  ALJ Zolezzi next concluded that while plaintiff suffers from degenerative

disc disease of the lumbar spine and osteoarthritis of the hips, and that those

impairments are severe within the meaning of the governing regulations, they

do not meet or medically equal, either individually or in combination, any of

the listed, presumptively disabling impairments set forth in the regulations, 20

C.F.R. Pt. 404, Subpt. P, App. 1.  AT 19.

     Before proceeding to step four of the prescribed disability protocol, ALJ

Zolezzi surveyed the available medical evidence in order to determine

plaintiff's residual functional capacity ("RFC"), given the limitations associated

with his discernable physical conditions.  AT 19-21.  Based upon that review,

ALJ Zolezzi concluded that plaintiff is capable of lifting and carrying twenty

pounds occasionally and ten pounds frequently, and of sitting, standing and

walking for up to six hours in an eight hour work day, with normal breaks.  AT

25.  At step four, the ALJ concluded that given his RFC, plaintiff is not

capable of performing the exertional requirements of his past relevant work.

ALJ Zolezzi then proceeded to step five of the disability analysis where, after

applying the medical-vocational guidelines set forth in the regulations, 20

C.F.R. Pt. 404, Subpt. P, App. 2 (the "grid"), he concluded that a finding of no

disability was directed.   AT 21-22.

The ALJ's opinion became a final determination on July 29, 2005, with

the denial by the Social Security Administration Appeals Council of plaintiff's

request for review of that decision.   AT 8.

### B.   This Action

Plaintiff commenced this action on September 8, 2005.  Dkt. No. 1.

Issue was subsequently joined by the Commissioner's filing of an answer,

together with an administrative transcript of the proceedings and evidence

before the agency, on December 22, 2005.  Dkt. Nos. 5, 6.  With the filing of

plaintiff's brief on February 6, 2006, Dkt. No. 7, and that on behalf of the

Commissioner on May 2, 2006, Dkt. No. 12, this matter is now ripe for

determination, and has been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District

of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[2]

III.    DISCUSSION

_____A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by

_____

[2] This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and later amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001. Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp. 2d at 148 (citing *Richardson*, 402 U.S. at 401).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464

(1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

> B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or

-11-

mental ability to perform basic work activities.  *Id.* §§ 404.1520(c),

416.920(c).  If the claimant is found to suffer from such an impairment, the

agency must next determine whether it meets or equals an impairment listed

in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.*

Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively

disabled".  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728

F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of his

or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is

determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies

with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*,

728 F.2d at 584.  Once that burden has been met, however, it becomes

incumbent upon the agency to prove that the claimant is capable of

performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.      The Evidence in this Case

In support of his challenge to the agency's determination, plaintiff raises several arguments. Buonora first challenges the ALJ's failure to consider the possibility of a psychological impairment of the requisite degree of severity, suggesting that the record discloses evidence that he suffers from depression and asserting that based upon that evidence the ALJ was under an obligation to more fully develop the record regarding that potential condition.  Plaintiff also challenges the ALJ's evaluation as to the severity of his back, hip and foot impairments, as well as the resulting RFC finding, and additionally contends that the final determination, which was based upon application of the grid, is fatally infected by virtue of the unsupported RFC finding.

1.      Psychological Impairment

Although his application for Social Security benefits was based exclusively on the existence of physical impairments, plaintiff now asserts that the record contains credible evidence demonstrating that he may suffer from a mental impairment which imposes non-exertional limitations on his ability to perform work related functions.  In support of that argument, plaintiff

-13-

cites the report of an agency orthopedic consultant Dr. Balagtas, who

examined him on April 4, 2002.  *See* AT 171-74.  A careful review of that

report, however, fails to disclose any mention of the possibility of depression

or some similarly limiting psychological impairment.   *See id.*

With one exception, the record is devoid of evidence suggesting that

the plaintiff suffers from medical psychiatric or psychological conditions.

According to the plaintiff, he has not received any hospital or other treatment

for psychological or emotional difficulties.  AT 244-45.  While it is true that in

September of 2002, plaintiff tested positive during initial screening for

depression, he refused the offer of a mental health referral on that occasion.

AT 218.

In making the argument regarding his psychological condition plaintiff

apparently attaches significance to the fact that he has been prescribed

amitriptyline, a medication often prescribed for the treatment of depression.

*See* AT 100, 171.  The records disclose, however, that that medication was

prescribed for the plaintiff to help control his pain.[3]  AT 239.

Having carefully considered the record in light of plaintiff's argument, I

find that he has failed to meet his burden of establishing the existence of a

_____

[3]      The prescription for Amitriptyline expired, and was apparently not renewed.
AT 230.

psychological impairment, and that the ALJ was therefore under no obligation to complete the record with regard to that alleged impairment.  20 C.F.R. §§ 404.1521(b)(2)-(6) and 416.921(b)(2)-(6); *see Rivera v. Schweiker,* 717 F.2d 719, 722 (2d Cir. 1983); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

### 2.   The ALJ's Failure to Conclude That Plaintiff's Condition Meets or Equals a Listed Impairment

After concluding that plaintiff suffers from lumbar spine and hip conditions of sufficient severity to meet the relatively modest test at step two of the disability algorythm, the ALJ concluded that those conditions were not, either individually or in combination, of sufficient severity to meet or medically equal any of the listed, presumptively disabling impairments set forth in the regulations.  AT 19.  The ALJ's decision, unfortunately, does not disclose the specific listings considered and rejected by him.  *See id.*  In a relatively concise argument lacking in specifics, in his brief to this court plaintiff asserts that his conditions meet or equal listings 1.00, 1.02, or 1.04, all of which relate to musculoskeletal conditions.[4]

Listing 1.02, describing major joint dysfunction, does not appear to

---

[4]     Listing 1.00 is an introductory provision related to the musculoskeletal system, and is followed by specific conditions described in Listings 1.02 through 1.06.

have applicability to plaintiff's circumstances.  In addition to involving the

existence of gross anatomical deformity, that listing also requires involvement

of major peripheral weight bearing joint, which could include the hip,

"resulting in inability to ambulate effectively, as defined in 1.00B2b; . . . ."  20

C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(a).[5]  The records in this case belie

plaintiff's claim, implicit in his argument, that he meets this requirement.  All

of the medical records reveal that plaintiff is capable of ambulating well;

indeed, he himself indicated that he walked a distance of three blocks to

attend the hearing and can walk for up to one and one-half hours at the mall.

AT 288-89.  Plaintiff's account of his daily activities further reveals that he

does not meet this criteria.  *See, e.g.,* AT 288-89, 296, 298-302, 305-06.

The other section referenced by the plaintiff in his argument is Listing

1.04, describing disorders of the spine – one which more closely aligns with

plaintiff's back condition.  At the outset it should be noted that while it is true

that plaintiff has sought treatment over time for a lumbar condition, it appears

---

[5]     To provide context, the definitional section referred to presents examples of an ineffective ambulation as including, though not being limited to, "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single handrail."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(2).

to have had a far less limiting impact upon his abilities than his hip condition.
In any event, Listing 1.04, which undeniably does include degenerative disc
disease among its coverage, additionally requires some evidence of nerve
root compromise.  In this instance there are no clinical findings that reflect the
existence of any sensory deficits or weaknesses, limitations on ranges of
motion, or evidence that plaintiff was not neurologically intact.  Although X-
rays of the plaintiff's spine show some mild degenerative disease, there is no
evidence in the record indicating compromise of a nerve root.  *See* AT 159,
161.  Addressing ranges of motion, reports of examinations have repeatedly
showed full ranges of motion of the spine and extremities, with negative
straight leg raising test results.  *See* AT 140, 142, 172, 214, 216.

Under these circumstances the plaintiff has failed to establish that his
impairments meet the severity required for Listings 1.02 or 1.04, and the ALJ
properly concluded that plaintiff's impairments do not meet or equal any of
the listings listed, presumptively disabling impairments.

### 3.   The ALJ's RFC Finding

Plaintiff next contends that the ALJ's RFC determination is not
supported by substantial evidence.  A claimant's RFC represents a finding of
the range of tasks he or she is capable of performing notwithstanding the

impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is

informed by consideration of a claimant's physical abilities, mental abilities,

symptomology, including pain, and other limitations which could interfere with

work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp.

2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess

plaintiff's exertional capabilities, addressing his or her ability to sit, stand,

walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a.

Nonexertional limitations or impairments, including impairments which result

in postural and manipulative limitations, must also be considered.  20 C.F.R.

§§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 §

200.00(e).  When making an RFC determination, an ALJ must specify those

functions which the claimant is capable of performing; conclusory statements

concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F.

Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC

finding can withstand judicial scrutiny only if there is substantial evidence in

the record to support each requirement listed in the regulations.  *Martone*, 70

F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y.

1997).

Plaintiff's contention regarding this issue deviates somewhat from the typical claimant argument, where an RFC finding is wholly or partially at odds with opinions of a treating physician.  In this instance, as ALJ Zolezzi noted, his RFC finding is in fact supported by an assessment of one of plaintiff's VA treating physicians, Dr. Remy Valdivia, M.D., who opined in November of 2002 that plaintiff should seek employment that would allow him to change positions, and permit him to stand and stretch after forty-five minutes to one hour of sitting.[6]  AT 205.  At the time that opinion was recorded plaintiff reported to Dr. Valdivia that he was able to walk for between thirty and forty minutes before low back pain permitted further activity, and that he could sit for one hour before having to stand to relieve pain.  *Id.*  Aside from these statements, which do not conflict with the RFC finding, there are no treating physician opinions which contradict the ALJ's RFC finding.

The ALJ's RFC finding is also in harmony with opinions recorded by a non-examining agency consultant who on April 30, 2002 reported that plaintiff's exertional limitations parallel those associated with light work.  *See*

_____

[6]      At that time Dr. Valdivia observed plaintiff to have a normal nonantalgic gait, with no apparent distress.  AT 205.

AT 175-182.  Such opinions of non-examining agency consultants,

particularly when they draw support from the medical evidence and are not

contradicted by the opinions of treatment providers, can provide substantial

evidence to support an RFC determination.  *Barringer v. Comm'r of Soc.

Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.). [7]

    In this case, the ALJ properly considered the entire medical record, as

well as plaintiff's testimony and reports of his own symptoms, when

determining his RFC.  AT 19-21.   As the ALJ noted, plaintiff testified that he

is able to stand or walk for an hour and a half, sit for two to three hours, and

lift four to five pounds.  AT 20, 288-89.  Plaintiff also testified that he does his

_____

    [7]        By regulation, light work is defined as follows:

>        Light work involves lifting no more than 20
>        pounds at a time with frequent lifting or carrying of
>        objects weighing up to 10 pounds.  Even though
>        the weight lifted may be very little, a job is in this
>        category when it requires a good deal of walking
>        or standing, or when it involves sitting most of the
>        time with some pushing and pulling of arm or leg
>        controls.  To be considered capable of performing
>        a full or wide range of light work, you must have
>        the ability to do substantially all of these activities.
>        If someone can do light work, we determine that
>        he or she can also do sedentary work, unless
>        there are additional limiting factors such as loss
>        of fine dexterity or inability to sit for long periods
>        of time.

20 C.F.R. § 404.1567(b).

own cooking, shopping, dusting, vacuuming, cleaning, and laundry, makes

his bed, goes to the mall, carries three to four grocery bags at once, reads,

watches television, and builds model airplanes and cars.  AT 288, 296, 298-

302, 305-06.

After giving consideration to the ALJ's RFC finding, in light of the record

as a whole, I find that it is supported by substantial evidence.

### 4.   Plaintiff's Foot Condition

Interspersed within other portions of plaintiff's brief is his claim that the

ALJ failed to consider the limitations imposed by his foot condition, when

determining his RFC.  The record, however, belies the claim that plaintiff's

foot condition imposed any limitations associated with that condition.  As the

ALJ noted, plaintiff was diagnosed by podiatrist Dr. Richtol as having flat feet,

for which orthotic devices were prescribed.  AT 193.  Dr. Richtol expressed

her belief that the pain associated with that condition would be alleviated with

the use of orthotics.  *Id.*  Plaintiff substantiated the fact that he experienced

improvement from the orthotics when he regularly wore them.  AT 192-93.

He also noted, however, that he had stopped wearing them for various

reasons, and that without them had experienced increased incidents of pain.

AT 192-193.

-21-

Conspicuously lacking in the medical record is any indication that plaintiff's foot condition had an appreciable affect on his ability to perform work activities. Under these circumstances the plaintiff has failed to carry his burden of demonstrating that that condition was sufficiently severe as to impose restrictions of his ability to perform work related activities, and the ALJ's decision to reject that condition as sufficiently severe at step two, and to incorporate any limitations associated with it in his RFC findings, was therefore not error. *See Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983).

5.    Commissioner's Step Five Determination

Plaintiff's final argument in support of his challenge to the Commissioner's determination relates to the ALJ's resort to the grid to make a finding of no disability at step five of the prevailing disability test. Plaintiff argues that testimony of a vocational expert should have been elicited in order to permit the ALJ to consider all of his exertional and non-exertional limitations on his ability to perform work-related functions.

Once the ALJ determined that plaintiff lacked the RFC to perform his past relevant work, the burden then shifted to the Commissioner to establish the existence of other work in significant numbers in the national economy

-22-

capable of being performed by the plaintiff notwithstanding his limitations. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). The ALJ properly looked to the grid to this case to find satisfaction of this burden. *See Heckler v. Campbell*, 461 U.S. 458 (1983); 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1520(f), 416.920(f).

Ordinarily, the Commissioner can meet his burden in connection with the fifth step of the relevant disability test by utilizing the grid. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). The grid takes into consideration a claimant's RFC, as well as his or her age, education and work experience, in order to determine whether he or she can engage in substantial gainful work in the national economy. *Rosa*, 168 F.3d at 78. Whether or not the grid should be applied in order to make a step five determination presents a case-specific inquiry which depends on the particular circumstances involved. *Bapp*, 802 F.2d at 605. If a plaintiff's situation fits well within a particular classification, then resort to the grid is appropriate. *Id.* If, on the other hand, nonexertional impairments, including pain, *significantly* limit the range of work permitted by exertional limitations, then use of the grid is inappropriate, in which case further

evidence and/or testimony is required.[8]  *Rosa*, 168 F.3d at 78; *Bapp*, 802 F.2d at 605-06.

In this instance the plaintiff has not pointed to any exertional or non-exertional limitations which could reasonably be expected to significantly erode the job base upon which the grid is predicated and thereby make the Commissioner's resort to that matrix inappropriate.  Nor has the plaintiff demonstrated that the assumptions made by the ALJ when applying the grid were not well-supported, or that when making the grid determination the ALJ applied the wrong rule or circumstances.  Accordingly, the ALJ's decision applying the grid and finding plaintiff not disabled is supported by substantial evidence and was procedurally proper.

IV.    SUMMARY AND RECOMMENDATION

A review of the record in this case, conducted applying the requisite deferential standard, reflects that the ALJ applied the proper legal standards to the evidence in the record, and that his finding of disability is supported by

---

[8]     As one court has explained,

> [a] nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569(a), (c)).

substantial evidence in the record.   Accordingly, it is hereby

RECOMMENDED, that defendant's motion for judgment on the

pleadings be GRANTED, that the Commissioner's decision denying disability

benefits be AFFIRMED, and that the plaintiff's complaint be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed with

the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO

THIS REPORT WILL PRECLUDE APPELLATE REVIEW.   28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d

Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of

this Report and Recommendation in accordance with this court's local rules.


Dated:      May 8, 2008
            Syracuse, New York



David E. Peebles
U.S. Magistrate Judge



-25-